KENNETH FRANCES, A/K/A KENNETH FRANCES *v.*
STATE OF INDIANA.

[No. 372S32. Filed September 11, 1974. Rehearing denied
November 26, 1974.]

*H. Harold Soshnick, Charles T. Bate,* of Shelbyville, *Melville E. Watson,* of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

HUNTER, J.*—This is an appeal by Kenneth Frances from a conviction of first degree murder. Appellant was charged with first degree murder by the Wayne County Grand Jury on June 16, 1970. The case was subsequently venued to the Hancock Superior Court. Appellant was tried by jury and found guilty on October 6, 1971. This appeal followed.

The appellant raises several issues on appeal, which will be discussed in depth below.

Appellant first argued that he was deprived of a fair trial by the action of the trial court in excusing a tentatively selected juror over appellant's counsel's objection. Appellant finds error in the trial court's excusing of the juror in an ex parte manner, outside the presence of appellant and his counsel. Furthermore, appellant contends that the court's action was arbitrary.

We find appellant's argument to be without merit. On the first day of the voir dire, Ula M. Carrier was tentatively accepted as a juror. At the opening of court on the second day, the trial court advised the parties that he had excused Mrs. Carrier for the reason that she had to appear in the Marion Municipal Court to answer a criminal charge. We believe the trial court's actions were proper.

The excusing of prospective jurors on a trial court's own

---

* This case assigned to this office July 30, 1974.

motion is within the sound discretion of the court. *Glenn* v. *State* (1972), 154 Ind. App. 591, 290 N.E.2d 103. Furthermore, an abuse of discretion will only result when some kind of actual injury or prejudice is visited upon a defendant. *Glenn* v. *State, supra.*

The appellant has failed to demonstrate that he has in any way been harmed by the unseating of Mrs. Carrier and the seating of her replacement. Although the better practice would be to excuse the juror in a defendant's presence, under these circumstances we can find no grounds for reversal. The trial court excused a prospective juror for a very sound reason—a reason which would have required the juror's discharge irrespective of the appellant's presence.

Appellant next contends that the trial court erred in overruling the appellant's motion for a mistrial and erred in refusing to strike the prospective venire of eleven members. A prospective juror, in response to questions posed by the prosecutor, stated that he was born and raised in Fountain City, the scene of the crime. The prosecutor further inquired: "Now from what you've read about this case, have you formed an opinion as to the guilt or innocence of the defendant?" The prospective juror responded by saying: "Well, if I would assume from what I've been told, I would say that he was probably guilty."

The trial court overruled appellant's motion but sustained a challenge for cause pursuant to IC 1971, 35-1-30-4 [Ind. Ann. Stat. § 9-1504]. The judge then went on to admonish the remainder of the jurors "to disregard any statements made by the prospective juror."

We believe that the trial court acted properly in this regard. This Court has often stated that the granting of mistrials rests largely within the sound discretion of the trial judge. *Duke* v. *State* (1968), 249 Ind. 466, 233 N.E.2d 159; *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312. Absent an abuse of that discretion, namely facts or circum-

stances indicating that the appellant was significantly prejudiced to the extent that the possibility of a fair trial was substantially subverted, we will not disturb the trial court's decision. We are unable to discern any serious injury suffered by the appellant, particularly in light of the curative action taken by the trial court. We must remind the appellant that he is entitled to a fair trial, not a perfect one. We believe that essential fairness and jury impartiality were preserved as best as possible by the trial court.

Appellant argues that he was deprived of a fair trial due to the alleged misconduct of the prosecutor. That alleged misconduct was the following statement made by the prosecutor during his opening statement: ". . . the defense has the opportunity and may make an opening statement." The appellant totally fails to establish in any way how such a statement impaired his right to a fair trial and, thus, we find such an allegation frivolous at best.

Appellant contends that his rights against self-incrimination and counsel were violated by his being fingerprinted the second time outside the presence of his court-appointed lawyer. This Court has consistently held that the right to counsel attaches at the *critical stages of criminal proceedings*. Clearly, fingerprinting, being a perfunctory, administrative procedure, is not such a critical stage. This Court and the United States Supreme Court have both held that fairly presented photographic identifications are not a critical stage of the proceedings. See *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440 and *United States* v. *Ash* (1973), 93 S. Ct. 2568. Moreover, the United States Supreme Court in *Gilbert* v. *California* (1967), 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, held that the taking of a handwriting exemplar was *not* a critical stage of the proceeding entitling the accused to counsel. The taking of handwriting exemplars, like fingerprinting, is a simple jailhouse procedure for which legal counsel is not required.

What possible assistance can legal counsel lend at a finger-

printing session? The appellant argues that the taking of his fingerprints violated his right against self-incrimination. This position is contrary to Indiana and federal authority. *Hollars* v. *State* (1972), 259 Ind. 229, 286 N.E.2d 166, squarely holds that the right against self-incrimination protects the accused only against *testimonial compulsion.* It does *not* protect against compulsory submission to purely physical tests such as fingerprinting, body measurements, handwriting and voice exemplars.

Therefore, we hold that neither appellant's Fifth or Sixth Amendment rights were violated by the State's fingerprinting procedures.

Appellant further alleges that the trial court erred in giving the jury the following instruction:

> "As heretofore stated, murder in the first degree involves the elements of malicious intent and premeditation. Malice has already been defined. To constitute premeditation, there must be time for deliberate thought after the mind conceives the idea of taking life, but there need be no appreciable space of time between the formation of the intent to kill and the attempted execution of the design. They may be as instantaneous as successive thoughts. If the design to kill is fully formed and the intent meditated upon, it matters not how soon the purpose is carried into execution, but the length of time intervening may be considered as tending to prove the existence or non-existence of premeditation."

The instruction is a precise statement of the law and can in no way be impugned. The appellant made the following objection to the instruction:

> "We will object to the giving of Court's instruction No. 25 for the reason that the inclusion of the word 'appreciable' is erroneous at law and as a matter of law. Any space of time is an appreciable space of time and the Court is in effect telling the jury that the time between successive thoughts must not and may not be appreciable. There must be some time and it's for the jury to determine whether the amount of time is or is not appreciable."

The objection to the instruction is totally without merit.

Finally, it is appellant's position that certain exhibits were improperly admitted into evidence and that the trial court erred in permitting a witness to testify in regard to said exhibits. The exhibits in question were an ammunition clip and several bullets. The witness was a special agent of the FBI assigned to bureau headquarters as a firearms expert. The bullets, State exhibits Nos. 15, 17, 19, and 21, were mailed to him in Washington, D.C. to determine whether they were fired from the murder weapon.

Appellant's major allegation is that the ammunition clip and bullets were inadmissible because the State failed to establish that they were in substantially the same condition as at the time of the crime. Once again appellant presents this Court with a very insubstantial argument. There is no evidence in the record establishing how and to what extent the condition of these items has changed. Appellant never exploded these questions at trial. The trial court concluded that the ammunition clip and bullets were in substantially the same condition as at the time of the crime, and there is substantial evidence in the record to support such a conclusion. Furthermore, if the appellant had chain of custody objections, he waived them by failing to assert that the State tampered with or altered the evidence.

For all the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported at 316 N.E.2d 364.